IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHANNON'S RAINBOW, LLC, a Utah limited liability company, SHANNON'S RAINBOW, LLC, a Delaware limited liability company, SHANNON'S RAINBOW PRODUCTION, a Pennsylvania limited liability company,<br><br>      Plaintiffs,<br><br><br><br><br><br>      vs.<br><br><br>SUPERNOVA MEDIA, INC., a New York corporation; JOYCELYN ENGLE a/k/a JOCEYLN DIPALMA, an individual, JOSEPH DIPALMA, an individual, JULIANNE MICHELLE, an individual, KELLY KENT, an individual, and Does 1-100,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, AND GRANTING PLAINTIFFS' MOTION TO ENJOIN<br><br><br><br><br><br>Case No. 2:08-CV-880 TS |

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject

Matter Jurisdiction, Lack of Personal Jurisdiction, Improper Venue or Transfer of Venue, Failure to State a Claim and Plaintiffs' Motion for Order Enjoining Prosecution of Second Filed Action. The controversy stems from disagreements regarding the production, distribution, and ownership of the film, Shannon's Rainbow ("the Film").

## I. Factual Background

Plaintiffs and Defendants were engaged in the production of the Film.[1] The crux of the controversy regards the location and timing of the Film's distribution, between the U.S. and overseas markets.[2] On July 23, 2008, the parties documented the terms and conditions agreed upon by each party in settlement of the various disputes.[3] However, these "Term Sheets" provided only a general and abbreviated description of the terms.[4] Additionally, these documents were "silent" on a number of other various issues.[5] With that in mind, the parties included a provision stating the parties agree to proceed in good faith to formalize a long form agreement.[6] The parties continued to negotiate for several months, eventually drafting a document the parties agreed was an accurate reflection of the memorialized terms of the Term Sheet and Amended

---

[1] Docket No. 21 at ¶¶ 3-10. "Defendants" refers to Defendant Engle, Defendant Michelle, and Defendant Supernova, unless otherwise specified.

[2] *Id.* at ¶ 10.

[3] *Id.* at ¶ 11.

[4] *Id.* at ¶¶ 11-12.

[5] *Id.* at ¶ 12.

[6] *Id.*

Term Sheet.[7]  The Term Sheet was then sent to Defendants for their signature.[8]  Upon receipt of

the document executed by Plaintiffs, Defendants refused to sign the agreement.[9]  Defendants

further stated that carrying out the terms of the agreement would result in a violation of an

investor agreement, in addition to "provid[ing] excellent grounds for investors to institute legal

proceedings."[10]  Recognizing that the issues would not be resolved absent litigation, Plaintiffs

filed this case on November 11, 2008.[11]  Shortly after filing this action, however, talks resumed

for several months and Plaintiffs did not formally serve Defendants with the Complaint, although

they were given a copy.[12]  Eventually it again became clear litigation was necessary and on April

15, 2009, Plaintiffs' attorney asked Defendants attorney if he would accept service on behalf of

Defendants Engle and Supernova.[13]  Defendants attorney refused to accept service.[14]  Defendants

in this action filed a nearly identical action in the Southern District of New York (the Second

Action) on April 15, 2009.[15]

## II. Issues

Defendants argue that Plaintiffs' claims should be dismissed based on lack of subject

---

[7]*Id*. at ¶ 13.

[8]*Id*.

[9]*Id*. at ¶ 14.

[10]*Id*. at ¶ 15.

[11]*Id*. at ¶ 16.

[12]Docket No. 26 at pg. xvii.

[13]*Id*. at pg. xviii.  Defendant DiPalma was not a party to the original Complaint.

[14]*Id*.

[15]*Id*.

matter and lack of personal jurisdiction. Defendants further argue this case should be dismissed for improper venue or, in the alternative, transferred to New York based on the same grounds. Defendants also argue three claims should be dismissed against Defendant DiPalma based on Plaintiffs' failure to state a claim upon which relief may be granted.

Plaintiffs argue this Court should enjoin the Second Action filed in New York, based on the first-to-file rule. Plaintiffs also argue that this Court should apply judicial estoppel and deny Defendants the ability to oust this Court of jurisdiction. In the alternative, Plaintiffs request leave to amend the Complaint to cure any jurisdictional defects. If this Court finds it lacks jurisdiction based on incomplete diversity, Plaintiffs ask the Court to dismiss Defendant DiPalma under Rule 21 to preserve jurisdiction.

As long as this Court finds subject matter jurisdiction the Court may continue to analyze the remaining claims. Therefore, as the threshold issue, subject matter jurisdiction will be addressed first. Because the venue and first-to-file rule analysis are closely related to and somewhat dependant on the jurisdictional analysis they will be addressed after the discussion on personal jurisdiction. The failure to state a claim upon which relief can be granted for Defendant DiPalma will be addressed last.

### III. Analysis

*A. Subject Matter Jurisdiction*

District courts have original jurisdiction in two instances. The first, federal question jurisdiction, gives courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."[16] In the second type, diversity jurisdiction, "district courts

---

[16]28 U.S.C. § 1331.

shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between. . . . citizens of different States."[17]  "Diversity jurisdiction requires that 'all of the adverse parties in a suit . . . . be completely diverse with regard to citizenship.'"[18]  This case is predicated on diversity jurisdiction.

The issue before the Court is the citizenship of an LLC.  Two methods are employed to determine the citizenship of a corporation: "(1) the state of incorporation, and (2) the state where the corporation's principle place of business is located."[19]  In 1990, the Supreme Court, in *C.T. Carden v. Arkoma Assoc.'s*,[20] addressed a related issue dealing with the citizenship of limited partnerships.  In that case the Supreme Court acknowledged the similarities between corporations and limited partnerships but declined to extend the corporate diversity status to limited partnerships and instead held that determining the citizenship of an artificial entity depends on the citizenship "of all the members," "the several persons composing such associations," "each of its members."[21]  Following *Carden*, Judge Posner, in *Cosgrove v. Bartolotta*,[22] started a domino effect of circuit courts in deciding that for the purposes of diversity, limited liability corporations

---

[17]28 U.S.C. § 1332(a)(1).

[18]*Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000) (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998)) (internal citations ommitted).

[19]28 U.S.C. § 1332(c)(1); *see also GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004).

[20]494 U.S. 185 (1990).

[21]*Id.* (internal citations omitted).

[22]150 F.3d 729, 731 (7th Cir. 1998).

are treated in the same manner as limited partnerships.[23]  Courts generally follow the *Carden*

Court's reasoning that "Congress, if it so chooses, is capable of adjusting the rules of diversity

jurisdiction to account for unincorporated associations."[24]

Defendant DiPalma admits that he is a member of Shannon's Rainbow, LLC, a Delaware

limited liability company, and Plaintiff in this case.[25]  As stated above, the majority rule is that,

for diversity purposes, an LLC is a citizen of every state in which its members reside.  Therefore,

as Defendant DiPalma is a member of Plaintiff Shannon's Rainbow, LLC, a Delaware limited

liability company, Shannon's Rainbow and DiPalma share citizenship and are therefore not

diverse.  Without complete diversity this court lacks jurisdiction.

Plaintiffs offer four alternatives for curing this jurisdictional defect.  First, Plaintiffs argue

that the *Cosgrove* holding is not the law of Utah or Tenth Circuit.  Second, given the very similar

action filed by Defendants in the Southern District of New York, Plaintiffs ask the Court to

judicially estopp Defendants from arguing subject matter jurisdiction does not exist.  Third,

Plaintiffs argue that their amended complaint supports federal jurisdiction based on federal

questions.  If the Court does not find substantive federal questions in the pleadings, Plaintiffs ask

the Court to grant them leave to amend so they may be able to properly include federal questions

---

[23]*Id.*; *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial*, 357 F.3d 827, 829 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Homfield II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed.Appx. 731, 732 (6th Cir. 2002).

[24]*Rolling Greens*, 374 F.3d at 1021-1022 (quoting *Carden*, 494 U.S. at 196-97); *see also GMAC Commercial Credit LLC*, 357 F.3d at 829 ("Congress is the appropriate forum to consider and, if it desires, to apply the same 'citizenship' rule for LLCs as corporations for diversity purposes.").

[25]Docket No. 49 at 2.

into their pleadings. Finally, Plaintiffs urge the Court to allow them to dismiss Defendant DiPalma under Rule 21 in order to preserve diversity jurisdiction.

*i. Tenth Circuit Precedent*

In support of the argument that LLCs should not be treated like corporations, Plaintiffs cite two cases, neither of which are on point. In *Dygert v. Collier*,[26] the Utah Court of Appeals, in an unpublished opinion, stated that "[a] company formed under the Act is a legal entity distinct from its members."[27] Although *Dygert* deals with the liability of members to an LLC, it does not address anything regarding an LLCs citizenship for purposes of diversity. Nor is it a Tenth Circuit case.

*Shell Rocky Mountain Prods. v. Ultra Res., Inc.*,[28] similarly does not deal with the current issue before the Court. Although the *Shell* Court does state that because Shell is a Delaware limited liability corporation and its principal place of business is Houston, Texas, it is a citizen of both Delaware and Texas, the issue in that case was the citizenship of Ultra Resources, a corporation, not the citizenship of Shell LLC.[29] Moreover, neither the facts nor the opinion make any mention of other members to the Shell LLC. Therefore, even though in this context the Tenth Circuit did treat the LLC as a corporation for diversity purposes, neither the facts nor the issues are similar to the question presented here.

In the absence of Tenth Circuit law on this issue, the Court will follow the majority rule

---

[26] 2004 WL 253554, at *1 (Utah Ct. App. Feb. 12, 2004).

[27] *Id.*

[28] 415 F.3d 1158 (10th Cir. 2005).

[29] *Id.* at 1162.

and hold complete diversity is lacking in this case.

*ii. Judicial Estoppel*

The doctrine of judicial estoppel was first explained in *New Hampshire v. Maine*,[30] as an effort to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[31] "[T]he rule is intended to prevent improper use of judicial machinery," and is additionally "designed to prevent parties from making a mockery of justice by inconsistent pleadings."[32]

Defendants state that they have not made inconsistent arguments or taken inconsistent positions. However, the Court need not address either of Defendants' positions because even if they are inconsistent, judicial estoppel should not be used to create subject matter jurisdiction where it otherwise does not exist.[33]

*iii. Federal Question Alternate Subject Matter Jurisdiction*

Plaintiffs assert that their claims for Intentional Interference with Economic Relations and Conversion are really causes of action arising out of the Copyright Act, thus conferring subject matter jurisdiction to the Court as a federal question claim. "The presence or absence of federal question jurisdiction is governed by the 'well pleaded complaint rule' which only provides

---

[30]532 U.S. 742 (2001).

[31]*Id.* at 749-50; *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007).

[32]*Eastman*, 493 F.3d at 1165 (quoting *New Hampshire*, 532 U.S. at 750); *Am. Nat'l Bank v. Fed. Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983).

[33]*Wight v. BankAmerica Corp.*, 219 F.3d 79, 89-90 (2d Cir. 2000) (citing 18 Charles Alan Wright, Artheu R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477, at 784 (1981) (citing *In re Southwestern Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976) (holding that judicial estoppel could not be applied to defeat diversity jurisdiction)) *rev'd on other grounds*, *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723 (1977)).

federal jurisdiction when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[34]

The Court does not find any well plead allegations regarding the Copyright Act in the Complaint. Moreover, the Court does not find any facts or inferences thereof evidencing the registration of the Film under the Copyright Act. At oral argument, Plaintiffs counsel stated that film generally is copyrighted material falling squarely within § 106 of the Copyright Act. Section 106 of the Copyright Act states in part: "[T]he owner of a copyright under this title has the exclusive rights to do and authorize any of the following: (1) to reproduce . . . (2) to prepare derivative works . . . (3) . . . to perform . . . (4) in the case of . . . motion pictures and other audiovisual works, to perform the copyrighted work publicly."[35] "Although an infringement action cannot be brought unless the work is registered, registration is not a condition of copyright protection."[36] Therefore even if Plaintiffs did plead a prima facie case of copyright infringement the claim would not be ripe for review until after it was registered.[37]

As noted above, Plaintiffs request leave to amend to add a federal question. Because the Court finds no federal question in the present Amended Complaint, subject matter jurisdiction must arise through diversity. Considering that the Court has already found complete diversity is lacking, the Court must address whether diversity can be cured and, therefore, the Court has

---

[34]*Miracorp, Inc., v. Big Rig Down, LLC*, 2009 WL 790189, at *3 (D. Kan. Mar. 24, 2009) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[35]17 U.S.C.A. § 106.

[36]*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 492 (1984) (Blackmun, J. dissenting); 17 U.S.C. §§ 411(a), 408(a).

[37]*See In re Napster, Inc. v. Copyright Litigation*, 191 F.Supp.2d 1087, 1101 (N.D. Ca. 2002).

subject matter jurisdiction before addressing the leave to amend.

*iv. Dismissing Defendant DiPalma under Rule 21*

"Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if his presence in the action is not required under Rule 19."[38] Rule 19 has two parts.[39] The first part, 19(a), articulates the analysis for necessary parties under the joinder rules.[40] The second part, 19(b), lays out the four factors necessary to determine dispensibility.[41] At oral argument, Plaintiffs' counsel outlined a three-part test to be used in determining dispensibility. However, the test outlined by Plaintiffs' counsel was actually the 19(a) analysis. Because the issue is one of dispensibility, not necessity, the Court will only look at the factors outlined under 19(b).

Rule 19(b) outlines four factors that are to be "evaluated in a practical and equitable manner."[42] The four factors are:

1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an

---

[38]*Miller v. Leavenworth-Jefferson Elec. Co-op., Inc.*, 653 F.2d 1378, 1382 (10th Cir. 1981) (superceded on other grounds) (quoting 7 C. Wright & A. Miller, Federal Practice and Procedure s 1685, at 332 (1972)); *see also Handelsman v. Bedford Vill. Assoc. Ltd. P'ship.*, 213 F.3d 48, 53 (2d Cir. 2000).

[39]FED. R. CIV. P. 19(a)-(b).

[40]*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr*, 94 F.3d 1407, 1411 (10th Cir. 1996).

[41]*Id.*

[42]*Id.* at 1412.

adequate remedy if the action is dismissed for nonjoinder.[43]

Prejudice to a party's interest "may be minimized if the absent party is adequately represented in the suit."[44]

After having amended the complaint to add Defendant DiPalma, Plaintiffs argue that he is a dispensable party, and the Court agrees. Plaintiffs state that Defendant DiPalma was added "in an effort to better cover the substantive issues addressed in Defendants' New York Action."[45] In combing through the Amended Complaint it appears that Defendant DiPalma is on the periphery of most of the allegations. Although DiPalma's name is mentioned several times, it is mostly in conjunction with, or in relation to, what Defendants Michelle and Engle did or did not do.[46] The first time DiPalma is mentioned in an even remotely substantive manner is when, at paragraph 164, Plaintiffs describe DiPalma as a member of Supernova in an effort to show one of the agreements contains a Utah choice of law provision.[47] DiPalma is mentioned substantively again in paragraph 174 where Plaintiffs state that "[a]ll agreements signed between the Company, Engle, Michelle, DiPalma, and Supernova establish clearly that ownership and control of the

---

[43]*Id.*

[44]*Id.* at 1411.

[45]Docket No. 69 at 24.

[46]Docket No. 8 at ¶¶ 8,46, 48, 49, 52, 53, 63, 66, 71, 74, 81, 82, 104, 106, 109 ("Engle acknowledged that as . . . sole conduit of information to DiPalma"; "Engle and Michelle have never actually given Rahr and DiPalma . . . "; "Engle and Michelle never informed Rahr or DiPalma . . . "; "Engle and Michelle continued to represent to the Company that they were providing Rahr and DiPalma . . . "; "Engle and Michelle had never provided the Investment Documents to Rahr and DiPalma"; "her basis for receiving the biggest fee and the most credits was that her husband DiPalma and friend Rahr demanded it"; and "Supernova (Engle/Michelle) agreed on behalf of Rahr and DiPalma").

[47]*Id.* at ¶ 164.

Film vested entirely with the Company, not with Supernova or any of its individual members."[48]

Plaintiffs also appear to classify Defendants Engle and Michelle separately from Defendant DiPalma: "The Defendants have gone to great lengths to convince Rahr and DiPalma that the Plaintiff[s] in this action have attempted to surreptitiously form Shannon's Rainbow, LLC (UT). . . ."[49]

DiPalma is mentioned only at the end of the first cause of action, breach of express and/or implied written and oral contracts, based on "information and belief" that he acted in concert with and was part of previously alleged breaches.[50]  The Amended Complaint does not ever specifically allude, however, to any breaches by DiPalma of the investment agreement.  DiPalma is not mentioned at all in the second cause of action, breach of covenant of good faith and fair dealing.  Although he is mentioned briefly in the third cause of action, fraudulent/negligent misrepresentation, this claim is contradictory.  In one sentence, Plaintiffs state that Defendant DiPalma misrepresented himself as an experienced investor and expert consultant to Supernova.[51]  Three paragraphs later, the Amended Complaint states that he acted collectively with the others in making misrepresentations to himself.[52]  In the fourth cause of action, breach of fiduciary duty, Defendant DiPalma is mentioned in terms of what Defendant Engle did/did not

---

[48]*Id*. at ¶ 174.

[49]*Id*. at ¶ 223.

[50]*Id*. at ¶ 318.

[51]*Id*. at ¶ 336.

[52]*Id*. at ¶ 339.

do in an effort to benefit Defendant DiPalma.[53]  DiPalma's involvement with the remaining claims is similar; he is not the center of any claim but appears to be merely an add-on.[54]

Defendants argue that Mr. DiPalma is indispensable to this action.  Defendants point out that Plaintiffs allege Defendant DiPalma was a "material part of the breaches."[55]  This paragraph, however, is made only on information and belief and none of the supporting allegations mention anything specifically that Defendant DiPalma has done outside of his million dollar investment. Defendants argue that resolution of the dispute is impossible without Defendant DiPalma because an interpretation of his investment agreement is required.  The Court, however, finds the dispute does not turn on the investment agreement.  The Court finds the substance of the dispute surrounds the agreements to which Engle and Michelle are parties and their responsibilities in connection with those agreements.  The Court also notes that Mr. Rahr, the other investor garnered by Defendants, who as alleged in the Amended Complaint to have an investment agreement with similar terms and responsibilities of the parties as DiPalma's agreement, is not a party to this action.  Additionally, in over 128 pages of emails submitted to the Court, not one was either sent to or was from Defendant Dipalma.  There is however, correspondence from Mr. Rahr, regarding the managers roles in determining the distribution of the Film, the crux of the controversy.  Any correspondence relating to Defendant DiPalma was made through his wife Defendant Engle.  As Mr. Rahr is similarly not a party, the Court finds that Mr. DiPalma would not add anything more as a party than he would as a witness.  Defendants also argue that finding

---

[53]*Id*. at ¶ 355.

[54]*Id*. at ¶¶ 336, 339, 386-89.

[55]Docket No. 8 at ¶ 318.

Defendant DiPalma is dispensible creates a risk of inconsistent judgments between districts. As will be discussed further below, the Court will enjoin Defendants from continuing with the New York Action, therefore the Court finds no risk of inconsistent judgments at this juncture.

Further, any prejudice that might be created towards Mr. DiPalma can be mitigated because his wife, daughter and the company to which he is a "consultant" will remain parties to the suit. Although neither Defendant Engle nor Defendant Michelle are parties to the investment contract, the desired outcome of all of the parties is presumably the same, to release and generate the most profit from the Film. A positive outcome for any of the Defendants will be a positive outcome for all. Additionally, Defendants themselves previously argued in their Motion to Dismiss for Failure to State a Claim that Defendant DiPalma should at least be partially dismissed on three claims.[56]

Although DiPalma is an investor in the Film, the Court does not believe he will be prejudiced if a judgment is rendered in his absence. This suit is not about his conduct or his investments, but really focuses on the conduct of his wife, Engle, and daughter, Michelle. Moreover, there is nothing in the pleadings to indicate a judgment rendered in his absence would be inadequate. Defendants' argue that Plaintiffs specifically amended their complaint to include Defendant DiPalma and therefore he must be an indispensable party. If the Court were to follow this logic, Rule 21 would have no place in the rules of Federal Civil Procedure as any named party would automatically be deemed indispensable. Because the Court finds Defendant DiPalma's alleged role in the underlying events is relatively minuscule and does not go to the heart of the matter, the Court finds he is a dispensable party. Therefore, because Defendant

---

[56]Docket No. 13 at 37-40.

DiPalma is the only Defendant member of the Plaintiff LLCs, diversity jurisdiction will be preserved by dismissing him. Therefore, the Court will grant Plaintiff's request to dismiss DiPalma. With diversity jurisdiction established, the Court may, and will, grant Plaintiffs' alternative request to amend the complaint to also allege federal questions.

The Court will next address Defendants' challenges to personal jurisdiction.

*B. Personal Jurisdiction*

Plaintiff has the burden of establishing personal jurisdiction over each Defendant.[57] At the pleading stage, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing that jurisdiction exists."[58] "All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing."[59] "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."[60] "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due

---

[57]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998); *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).

[58]*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009); *see also Soma Med. Int'l*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Hafen v. Strebeck*, 338 F.Supp. 2d 1257, 1260 (D. Utah 2004).

[59]*Rusakiewicz*, 556 F.3d at 1100.

[60]*Shanks v. Westland Equipment and Parts Co.*, 668 F.2d 1165, 1166 (10th Cir. 1982).

process clause of the Fourteenth Amendment."[61]  Thus, as the forum state, Utah law governs.[62]

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah Long-arm statute: (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'"[63]

Utah's long-arm statute provides in pertinent part as follows:

> Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of that or related to:
>
> the transaction of any business within this state; contracting to supply services or goods in the state; the causing of any injury within this state whether tortuous or by breach of warranty.[64]

The Utah legislature has declared that the long-arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[65]  "The long-arm statute itself defines the transaction of business broadly, as 'activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the

---

[61]*Soma Med. Int'l*, 196 F.3d at 1295 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[62]*Rusakiewicz*, 556 F.3d at 1100 (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

[63]*Nat'l Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995).

[64]Utah Code Ann. § 78B-3-205 (West 2009).

[65]*Id*. § 78B-3-201.

state of Utah.'"[66]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'"[67]  Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state."[68]  The "minimum contacts" necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[69]  Purposeful availment exists where a party has "created 'continuing obligations' between himself and residents of the forum" and where "his activities are shielded by 'the benefits and protections' of the forum's laws."[70]  If the defendant's activities create sufficient minimum contacts, we then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[71]

We therefore examine the quantity and quality of Defendants' contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the

---

[66]*Id*. § 78B-3-202.

[67]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

[68]*World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[69]*OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472).

[70]*Burger King Corp.*, 471 U.S. at 476 (internal citations omitted).

[71]*OMI Holdings, Inc.*, 149 F.3d at 1091.

contract and the parties' actual course of dealing"[72] and then assess whether the cause of action arises out of those contacts to determine whether the exercise of personal jurisdiction over a defendant comports with due process.[73]

*i. Minimum Contacts*

In order to comply with Due Process, when a Court asserts specific jurisdiction under a long arm statute, the party over whom jurisdiction is being asserted must have minimum contacts that are purposefully directed to the forum and the litigation must result or arise out of those activities.[74]

In this case Defendants signed multiple documents and wrote emails declaring their partnership with Summitworks, a Utah resident.[75] They are also co-managers of an entity, Shannon's Rainbow, DE with its principal place of business located in Utah.[76] Defendants also signed contracts with Utah choice of law provisions.[77] These contracts are the basis of this action. Additionally, Defendants along with Plaintiffs, used property located in Utah to collateralize bridge financing for the project.[78] Further, Plaintiffs submitted an Exhibit of 128-

---

[72]*Burger King Corp.*, 471 U.S. at 479.

[73]*Soma,* 196 F.3d at 1298.

[74]*OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472).

[75]Docket No. 8-4 at pg. 30, 89; Docket No. 8 at ¶ 58; Docket No. 8-5 at pg 5; Docket No. 8-6 at 2.

[76]*Id.*; Docket No. 8 at ¶ 2.

[77]*See* Docket No. 8-11 ¶¶ 22-23; Docket No. 8-10 at pg. 9 ¶ 23, pg. 21; Docket No. 26-2 at ¶ 26.

[78]Docket No. 8 at ¶ 247; Docket No. 8-9 at 9.

pages worth of email correspondence between Defendants and directed to Plaintiffs in Utah.[79]

The inclusion of the Utah choice of law provision in the contract establishes that the parties clearly contemplated having to defend in Utah, and also indicates that both Parties intended to have the protection of Utah laws. Those activities are sufficient to meet the minimum contact and purposeful availment standards. Defendant signed multiple documents and contracts with a Utah party and agreed to be bound by Utah law. Therefore it can fairly be said that Defendants should have reasonably anticipated being haled into court here.[80]

Defendants argue these contacts are not sufficient because their contacts with Plaintiffs are not contacts with Utah, and anything the Court might find to be contacts with Utah are just emails and correspondence with Plaintiffs' attorney and other non-parties of interest. Defendants also argue that any contacts or affiliations with Plaintiffs do not constitute contacts for the purposes of jurisdiction and directed the Court to look at the contacts made from June through November 2008 as the relevant time frame for establishing jurisdiction. The Court examines these contentions as follows:

a. Non-Party Contacts

Defendants contend that they has no contacts with Utah and any contacts they did have were not with parties to this suit. However, Plaintiffs have shown the following in support of their prima facie showing of personal jurisdiction: Defendants became co-managers of Shannon's Rainbow, LLC with Summitworks, the owner of the rights to script, on May 14, 2008.[81]

_____

[79]Docket No. 8-4;

[80]*Burger King*, 471 U.S. at 474 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[81]Docket No. 8 at ¶¶ 18, 26; Docket No. 13 at pg 6.

Summitworks, the managing partner of both Shannon's Rainbow Utah and Shannon's Rainbow Delaware, is located in Salt Lake City and has been a "resident" of Utah since at least 2007.[82] As previously stated, the Utah long arm statute construes the transaction of business broadly and includes "activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah."[83] Defendant Engle sent hundreds of emails to Plaintiffs counsel in Utah.[84] Whether or not Plaintiffs' counsel is a party to this action is irrelevant because he represented Plaintiffs whose principle place of business and address are both in Utah.[85] Therefore, contacts with Plaintiffs' counsel in Utah affect both persons and businesses within the state of Utah in accord with the long arm statute. Defendant Engle also sent emails to Frank Johnson, the director, and Charles Morrison, who are both individual residents of Utah and members of Summitworks, which is a resident of Utah.[86] At least one email is directed to Frank Johnson as an individual.[87]

Defendants also argue that their contacts with Mr. Johnson and Mr. Morrison were made as representatives of Shannon's Rainbow DE, not as individuals or as representatives of Summitworks. However, a discussion of this argument is unnecessary as both of those entities are located in Utah and sufficient contacts with them have already been established.

---

[82]*Id*. at ¶¶18-19.

[83]*SII MegaDiamond*, 969 P.2d at 433.

[84]*See* Docket 8-4.

[85]Docket No. 8 at 2.

[86]*Id*. at pgs. 2, 21, 23, 28, 115.

[87]*Id*. at pg. 2.

<u>b. Contact Time Frame</u>

Defendant argues that the only relevant time frames, for the purpose of determining jurisdiction, were from June to November 2008 - - - during such time frame the contacts were all regarding this litigation, or after the time of filing - - - which is insufficient to form a basis for jurisdiction. The Court does not find the June to November time period to be the only relevant time frame in this analysis. Courts must look at all relevant contacts, over any period of time, significant to a suit. Even if that was the relevant time frame, there are still sufficient contacts between Defendants and Utah. Defendants became partners with Shannon's Rainbow, DE, whose address and principal place of business, was in Utah in May of 2008. Defendant Engle negotiated a contract for her daughter, Defendant Michelle's services containing a Utah choice of law clause.[88] The inducement letter attached to that contract also states the contract is with Shannon's Rainbow, LLC located in Salt Lake City.[89] Although there is no date on this signed contract, Plaintiffs in their memorandum in opposition to the motion to dismiss, proffer this contract was executed on June 16, 2008. Additionally, Defendants negotiated over 20 separate drafts of agreements containing a Utah choice of law provision between July and October, 2008.[90] Moreover, before Defendant Engle decided to sign onto the project she was in contact with the director of the movie who was also a Utah resident. Therefore, even if June through November were the only relevant time frame, at the Court finds there are sufficient contacts unrelated to the formation of Shannon's Rainbow, UT, or to the litigation, to form the basis of

[88]Docket No. 26 at 6; Docket No. 8-10 at 9, ¶ 23.

[89]Docket No. 8-10 at 12.

[90]Docket No. 8 at ¶ 168.

jurisdiction.

*ii. Claims Arising Out of the Contacts*

After establishing minimum contacts with Utah exist, the Court must determine whether the claims arise out of those contacts for jurisdiction to be proper. Defendants state that even if they have sufficient minimum contacts the claims do not arise out of those contacts and therefore jurisdiction is still improper. The claims arise out of the contracts signed between the parties. Both Defendant Engle's and Defendant Michelle's contracts, as discussed above, were negotiated and sent back and forth from Utah. Moreover, regardless of whether the contracts were with Shannon's Rainbow, DE or Shannon's Rainbow, UT, both entities have a principal place of business in Utah, and their address on the contracts is a Utah address.[91] Therefore the claims arise out of Defendants' contacts with Utah.

The Court finds that this action arises out of and relates to Defendant's contacts with Utah.

*iii. Fair Play and Substantial Justice*

Once the Court finds that the Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case, or in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[92] "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving

---

[91]Docket No. 26 at pg. 14.

[92]*Burger King*, 471 U.S. at 476.

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[93]

In applying the second prong of the Due Process analysis the Court examines the quantity and quality of defendant's contacts with Utah, including negotiations and contemplated future consequences as well as the actual terms of the contract.

According to the terms of the contracts in question, a majority, if not all of the contracts are to be governed by Utah law. Therefore it is unreasonable to find the Defendants would be burdened by having to defend the suit in Utah. Forums generally have an interest in resolving disputes involving their residents, and Utah's interest is no different. Additionally, Utah has an interest in resolving disputes involving contracts controlled by Utah law. Similarly, since the contracts are governed by Utah law, it is the most efficient use of judicial resources to resolve the controversy here. Moreover, this case implicates the policies underlying the first-to-file rule.

Defendants argue that they were unaware they were transacting business with a Utah entity, and the location of an entities' agent is irrelevant for the purposes of establishing jurisdiction. Defendants further state that they did not purposefully avail themselves of doing business in Utah because they purposefully did not include a Utah forum clause in the contracts. Defendants argue that although a Utah choice of law provision was included it is materially different than the inclusion of a Utah forum clause.

The Court finds these arguments unpersuasive. Although Shannon's Rainbow DE was

---

[93]*Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).

incorporated in Delaware, its principal place of business was Utah.[94]  Moreover, as previously

argued by Defendants, an LLC is a citizen of every state where its members reside.

Summitworks, the original manager of Shannon's Rainbow, DE, is a citizen of Utah.  Defendants

are not afforded the luxury of ignoring the identity of the entities they do business with.

Although the contact with an entity's agent, in any location, might not be sufficient for

establishing jurisdiction, contact with the entity itself in a specific location is sufficient.

Plaintiffs submitted the signed deal memorandum with Defendant Engle clearly stating that

Engle was doing business with Shannon's Rainbow, LLC, located at 170 S. Main Street, Suite

1025, Salt Lake City, Utah 84101.[95]  On the basis of the motions and memoranda submitted to

the Court thus far, it appears that most correspondence with Shannon's Rainbow, DE was done

through a Utah address, or through individuals on behalf of the entity located in Utah.  Moreover,

in an email dated October 28, 2008, Defendant Engle states that if some breach occurred, "Law

suits could be brought in NY, LA, Texas and Florida, *as well as Utah*."[96]

    However, even if Defendants never saw Shannon's Rainbow, DE's address, the Utah

choice of law provision contained in the contracts signed by Defendants is sufficient to

demonstrate their purposeful availment.  Defendants argue that because they did not include a

choice of forum clause, they have not availed themselves of the privilege of conducting business

in Utah.  A party has purposefully availed itself if it gets the "'benefits and protections' of the

---

[94]*Id*. at ¶ 2.

[95]Docket No. 8-10, Ex. 16 at 21.

[96]Docket No. 8-10, Ex. 4 at pg 77 (emphasis added).

24

forum's laws.'"[97]  Including a Utah choice of law clause is the most direct way of getting the benefits and protections of Utah laws.  Defendants argue that including a Utah choice of law provision is not as material as a Utah forum clause.  The Court disagrees.  A choice of law clause is more material than a choice of forum clause because the forum does not dictate what law will be applied.  Parties could stipulate to a forum of one state, but to laws of another.  Therefore, because Defendants signed contracts with Utah choice of law provisions, the Court finds they are getting the benefits and protections of Utah laws and, accordingly, have availed themselves to Utah.

The Court finds that exercising jurisdiction over Defendants Engle, Michelle and Supernova will not offend traditional notions of fair play and substantial justice.  Because asserting specific personal jurisdiction over Defendant Engle and Michelle comports with Due Process it also satisfies Utah's long arm statute.[98]

However, the same is not true for Defendant Kelly.  The Court does not find any allegations regarding Defendant Kelly's role in this case, let alone allegations sufficient to support its jurisdiction over Defendant Kelly.  Plaintiffs' have not met their burden of establishing jurisdiction over Defendant Kelly and therefore the Court dismisses Defendant Kelly from this action.[99]

Defendants' brief includes a variety of confusing and intricate facts that, if true, would call into the question this Court's jurisdiction over them.  However, at this stage of the

_____

[97]*Burger King Corp.*, 471 U.S. at 476.

*SII MegaDiamond*, 969 P.2d at 433.

[99]*OMI Holdings, Inc.*, 149 F.3d at 1091.

proceedings the Court must resolve all factual allegations in favor of the Plaintiffs, and therefore

the Court cannot consider the disputed facts presented in Defendants' brief.  Because Plaintiffs

have shown that Defendant carried on business with a Utah corporation for a period of years, and

included Utah choice of law provisions in contracts between the parties, Plaintiffs have

established a prima facie showing that personal jurisdiction is proper.

*C. Venue*

*i. Improper Venue*

28 U.S.C.A § 1391(a) states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except
as otherwise provided by law, be brought only in (1) a judicial district where any
defendant resides, if all defendants reside in the same State, (2) a judicial district in which
a substantial part of the events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action is situated, or (3) a judicial
district in which any defendant is subject to personal jurisdiction at the time the action is
commenced, if there is no district in which the action may otherwise be brought.[100]

It is undisputed that § 1391(a)(1) and (a)(3) are not applicable here.  In *Stewart v.*

*Stoller*,[101] this Court noted that the language in § 1391(a)(2) "has been interpreted to allow for the

fact that a substantial part of the events may have occurred in more than one district and 'venue

may be proper even if contacts with another district were more substantial.'"[102]  Further, the

*Stewart* Court also stated that "[f]ederal courts have held that the 'substantial part' requirement

of Section 139[1](a)(2) is satisfied where the plaintiff resides in the forum state and defendants

---

[100]28 U.S.C. § 1391(a).

[101]2008 WL 4168519 (D. Utah Aug. 28, 2008).

[102]*Id*. at *3 (quoting *Mohr v. Margolis, Ainsworth & Inlaw Consulting, Inc.*, 434
F.Supp.2d 1051 (D. Kan. 2006)).

have contacts with plaintiff in the forum state related to the subject of the action."[103]  *Stewart* was a Utah resident's legal malpractice action against lawyers plaintiff used to file a suit in California.[104]  Defendants in that case argued that venue was improper because all defendants were residents of California, New Jersey, or Washington and the pertinent events occurred in Los Angeles.[105]  The *Stewart* Court found venue to be proper in Utah because defendants contacted plaintiff, a Utah resident, at her home, plaintiff executed engagement letters, and had correspondence with defendants, all from Utah.  Courts have found venue proper when the normal duties between parties necessitate correspondence between the parties in different states.[106]  Other courts have found venue proper when an in-state plaintiff contracted with an out-of-state defendant to make an investment in the defendant's business enterprise.  Based on said contract plaintiff obtained a line of credit for defendant in the state, and the alleged fraudulent representations were made via fascimile, e-mail or in person to the in-state plaintiff.[107]

Defendants in this case argue that venue is improper because Plaintiffs fail to allege any significant events or transactions concerning the Film that occurred in Utah.[108]   However, as discussed above, Plaintiffs have been residents of Utah since at least 2007.  When Plaintiffs and Defendants first engaged in discussions about forming a business relationship Plaintiffs were

---

[103]*Id.*

[104]*Id.* at *1.

[105]*Id.*

[106]*Furr v. Aguilar*, 2005 WL 1801627 (D. Colo. July 28, 2005).

[107]*Stein v. Stein*, 2006 WL 1892580 (D. Kan. July 11, 2006).

[108]Docket No. 13, at 19.

residents of Utah.[109]  The Film script rights were assigned to SummitWorks, a Utah limited liability company.[110]  When Plaintiffs and Defendants became partners in Shannon's Rainbow, LLC, Delaware, the managing partner, Summitworks, was a resident of Utah.[111]

Defendant relies on *Crane v. Memorial*,[112] for the proposition that where all relevant contracts were negotiated, executed, and performed outside of Utah, and where all acts and events related to that contract occurred outside Utah, venue in Utah is improper.[113]  However, as stated in detail above, the contracts in this case were signed with Utah choice of law provisions, and were negotiated with a party in Utah.[114]  Numerous emails and phone calls about the project were exchanged with Plaintiffs in Utah.  Additionally, land in Utah was used as collateral for loans.[115]  *Crane* is not applicable in this case because at least some of the contracts are alleged to have been negotiated, executed and performed in Utah, and acts and events related to those contracts, including securing collateral, were performed in Utah.  This Court has previously held that "venue may be proper even if contacts with another district were more substantial."  While it is true that there might be more substantial contacts with other venues, like Pennsylvania where the film was filmed, there are sufficient contacts with Utah for venue to be proper here.

---

[109]Docket No. 26, at ix.

[110]Docket No. 8., at ¶ 18.

[111]Docket No. 26, at x.

[112]2009 WL 742567 (D. Utah Mar. 20, 2009).

[113]*Id*. at *8.

[114]Docket No. 8-7 at 51; Docket No. 8-8 at 2.

[115]Docket No. 8-9 at 9.

Moreover, the mere fact that none of the Defendants in this case reside in Utah does not mean Utah is not a proper venue.[116]

## ii. Transfer of Venue

The venue statutes provide: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought."[117] Defendant urges this Court to transfer the action to the "proper" venue, which Defendant contends is the Southern District of New York. However, since the Court has not found venue to be improper, transfer is unnecessary. Moreover, transferring to the Southern District of New York does not comport with the first-to-file rule discussed below.

### D. First-to-File Rule

The "first-to-file" rule is well settled law establishing the general principle that the first court who obtains jurisdiction over the same parties and issues is the appropriate court to resolve the case.[118] The Tenth Circuit has stated it is a general rule that "where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court."[119] "A Federal District Court which first obtains jurisdiction of

---

[116]*Stewart*, 2008 WL 4168519, at *1.

[117]28 U.S.C. § 1406(a).

[118]*O'Hare Intern. Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1971); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *Cessna Aircraft Company v. Brown*, 348 F.2d 689 (10th Cir. 1965).

[119]*O'Hare Intern. Bank*, 459 F.2d at 331; *see also Hickey v. O'Connor & Drew, P.C.*, 2009 WL 2163499, at *1 (W.D. Okla. July 10, 2009) (quoting *O'Hare Intern. Bank*, 459 F.2d at 331); *Schreiber v. United States*, 2009 WL 890688, at *4 (D. Colo. March 31, 2009); *Henson v. Unique Concepts, Inc.*, 1986 WL 15761, at *2 (D. Kan. May 08, 1986).

parties and issues may preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another Federal District Court."[120]

The first-to-file rule applies when three conditions are met: (1) chronology of the actions, (2) similarity of the parties, and (3) similarity of the issues.[121] It is the first to file, not the first to serve that is controlling, in terms of chronology of the actions.[122] Courts have held that the parties do not need to be identical. Only similarity or "substantial overlap" is required.[123] Similarly, the issues must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues.[124] Although rare, due to philosophical concerns regarding one court's control over another, the Tenth Circuit has held that a Federal District Court may enjoin plaintiffs from proceeding in a second filed action in order to preserve its jurisdiction.[125]

In this case it is undisputed that Plaintiffs filed the action in this Court before Defendants

---

[120]*Victor Co., L.L.C., v. Ortho Organizers, Inc.*, 932 F.Supp. 261, 263 (D. Kan. 1996) (quoting *Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir.), *cert denied*, 340 U.S. 816, (1950)).

[121]*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

[122]*BBC Intern. Ltd. v. Lumino Designs, Inc.*, 441 F.Supp.2d 438, 442 (E.D.N.Y. 2006); *Uti Corp. v. Plating Resources, Inc.*, 1999 WL 286441, at *7 (E.D. Pa. May 7, 1999); *McJunkin Corp. v. Cardinal Sys., Inc.*, 190 F. Supp. 2d 874, 876 ( S.D. W.Va. 2002); *Collegenet, Inc. v. Applyyourself, Inc.*, 2002 WL 33962845, at *3 (D.Or. July 26, 2002).

[123]*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness*, 179 F.R.D. 264, 270 (C.D.Cal. 1998); *Inherent.com v. Martindale-Hubbell*, 420 F.Supp. 2d 1093, 1097 (N.D. Cal. 2006).

[124]*See, Horn & Hardart Co. v. Burger King Corp.*, 476 F.Supp. 1058, 1059-60 (S.D. N.Y. 1979).

[125]*Victor Co., L.L.C.*, 932 F.Supp at 263.

filed their action in the Southern District of New York.[126]  Therefore, the first element is met.  The

second element requires a "substantial overlap" of the parties.  Plaintiffs' Amended Complaint

names:

> SHANNON'S RAINBOW, LLC,  a Utah limited liability company, SHANNON'S
> RAINBOW, LLC, a Delaware limited liability company, SHANNON'S RAINBOW
> PRODUCTION, a Pennsylvania limited liability company.
> v.
> SUPERNOVA MEDIA, Inc., a New York corporation; JOCELYN ENGLE a/k/a
> JOCELYN DIPALMA, an individual; JOSEPH DIPALMA, an individual; and
> JULIANNE MICHELLE, an individual, and KELLY KENT, an individual, and Does 1-
> 100.[127]

Defendants' Complaint names:

> SUPERNOVA MEDIA, INC, on behalf of SHANNON'S RAINBOW LLC, a Delware
> Limited Liability Company, JOSEPH DI PALMA, and JOYCE ENGLE
> v.
> SHANNON'S RAINBOW LLC, a Utah Limited Liability Company, SUMMITWORKS,
> LLC, FRANK E. JOHNSON, KELLY NELSON, CHARLES MORRISON, CARMINE
> "TONY" LOTITA, JOSEPH G. PIA, JOHN MOWOD, LAWRENCE RICHERT, and
> Does 1-100.[128]

Although these suits do not name identical parties, they name similar parties with enough overlap

to satisfy this element.  Moreover, Defendants admission that "an action concerning these events

is already pending in the Southern District of New York"[129] indicates to the Court that they

believe the parties and events are similar.  Because all of the elements of the first-to-file rule are

satisfied, the rule applies to this case.  Based on the facts of this case, the Court will enjoin

---

[126]Docket No. 13, at 4 (stating that they filed and served their NY Complaint in April
2009, and Plaintiffs immediately "raced to serve its Utah complaint" 120 days after filing).

[127]Docket No. 8.

[128]Docket No. 76-2.

[129]Docket No. 13 at pg. 21.

Defendants Engle, Michelle and Supernova from pursuing any further action in the Southern District of New York.

### E. Failure To State A Claim For Which Relief Can Be Granted

The Court need not address this claim because it is specifically regarding Defendant DiPalma and Mr. DiPalma will be dismissed under Rule 21 in order to preserve jurisdiction.

## IV. Conclusion

Based on the above it is hereby

ORDERED that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 48) is DENIED. It is further

ORDERED that Defendant DiPalma is DISMISSED according to Fed. R. Civ. P. 21. It is further

ORDERED that Plaintiffs' request for Leave to Amend (Docket No. 69) is GRANTED.[130] It is further

ORDERED that Defendants Motion to Dismiss for Lack of In Personam Jurisdiction, Improper Venue or Transfer for Venue (Docket No. 12) is DENIED in part and MOOTED in part. It is further

---

[130] On January 11, 2010, minutes before oral argument on these motions, Plaintiffs submitted another Motion to Amend/Correct the Amended Complaint (Docket No. 77), and Defendants responded with a Motion Stay (Docket No. 80) pending the issuance of this order. Therefore Defendants' Motion to Stay (Docket No. 80) is MOOT. However, this order does not effect Plaintiffs' Motion to Amend (Docket No. 77).

ORDERED that Plaintiffs' Motion to Enjoin Prosecution of Second-Filed Action (Docket No. 18) is GRANTED.  Defendants Engle, Michelle and Supernova, their agents, and representatives are enjoined from pursuing any further action in the case against Plaintiffs in Southern District of New York.

DATED   January 26, 2010.


BY THE COURT:


_____

TED STEWART

United States District Judge